UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:14-CV-81250-KAM

MARTIN E. O'BOYLE,

    Plaintiff,

vs.

ROBERT A. SWEETAPPLE, et al.,

    Defendants.
_____/

**OPINION AND ORDER**

This matter is before the Court on Defendant, Town of Gulf Stream's, Motion to Dismiss Second Amended Complaint (DE 56). This matter is ripe for review. As more fully described below, the motion is partially granted.

**I. Background**

Plaintiff, Martin E. O'Boyle, sues the Town of Gulf Stream (the "Town") under 42 U.S.C. § 1983 (2012) for First Amendment retaliation.[1] The following facts are taken from O'Boyle's second amended complaint, which the Court must accept as true for the purposes of this order.

O'Boyle, who is a resident of the Town, describes himself as "an avid supporter of Florida's Public Records Law."[2] (DE 41 ¶¶ 8–9.) Over the past few years, he has submitted numerous public records requests to the Town and various other municipalities and agencies. (DE 41 ¶ 9.) When O'Boyle believes that his public records requests are not complied with, he sues to enforce his rights

---

[1] Plaintiff asserts a separate state-law claim against Defendant Robert A. Sweetapple.

[2] Florida's "Public Records Law" is codified at Fla. Stat. §§ 119.01–119.15.

under the Public Records Law. (DE 41 ¶ 10.) O'Boyle has filed approximately 29 lawsuits against the Town for alleged violations of the Public Records Law. (DE 41 ¶ 11.) With the sole purpose of chilling O'Boyle's right to petition in the courts for redress, the Town commission unanimously voted to initiate a RICO lawsuit against O'Boyle. (DE 41 ¶¶ 65–66.)[3]

Prior to the RICO suit, O'Boyle ran for a seat on the Town council and placed numerous campaign signs throughout the Town. Many of the signs were allegedly removed by Town agents or officials. (DE 41 ¶ 13.) These signs were allegedly "targeted" for removal at the request of Town Manager William Thrasher because the signs contained political content. (DE 41 ¶ 13.) During this same time period, O'Boyle flew banners and displayed signs that were critical of his opponents or carried other political messages. (DE 41 ¶ 14.) In response, the Town threatened O'Boyle with code enforcement citations carrying daily fines not to exceed $500 per sign per day if O'Boyle did not remove his signs and otherwise cease such political speech. (DE 41 ¶ 14.) The Town has made similar threats against other residents displaying signs with political messages and has issued citations to such residents. (DE 41 ¶¶ 53–54.) The Town has also used the state-court system to sanction or restrain O'Boyle from flying politically-charged banner planes. (DE 41 ¶ 59.)

After the March 2014 election, O'Boyle continued to criticize Town officials with banners on the side of his truck, which he would occasionally park at Town Hall "to ensure maximum visibility and political effectiveness." (DE 41 ¶¶ 16, 56.) In April 2014, the Town passed a parking ordinance that was directed at preventing this display of O'Boyle's banners. (DE 41 ¶ 58.) The

---

[3] The RICO case was later dismissed at the pleading stage. In the Court's order dismissing the RICO complaint, the Court stated that the complaint "fails because on the most fundamental level, the entire factual underpinning of Plaintiffs' case cannot, under any circumstances, constitute a RICO violation." *Town of Gulf Stream v. O'Boyle*, No. 15-80182-CIV, 2015 WL 3970612, at *4 (S.D. Fla. June 30, 2015).

ordinance reserves parking spaces in front of Town Hall for Town employees or those conducting business at Town Hall. (DE 41 ¶ 63.) The effect of this ordinance is that O'Boyle may only park in the rear of Town Hall, where his banner will enjoy little visibility because the Town installed hedges near the rear parking spaces shortly after enacting the ordinance. (DE 41 ¶ 63.) The Town later towed O'Boyle's truck for violating the ordinance. (DE 41 ¶ 64.)

O'Boyle claims that the Town's actions constitute retaliation for constitutionally-protected speech and activities. The Town moved to dismiss for failure to state a claim. In its motion, the Town also argues that the complaint is ambiguous or a "shotgun" pleading and that O'Boyle, at a minimum, should be required to re-plead with more exacting allegations.

## II. Legal Standard

While the Town labels its motion as solely a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the motion raises some arguments that are more accurately categorized as being brought under Rule 12(e), which governs motions for a more definite statement. Putting aside labels in favor of substance, the Court discusses the standards for both types of motions.

### A. Rule 12(b)(6) Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise

a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**B. Rule 12(e) Standard**

Rule 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." If a pleading "fails to specify the allegations in a manner that provides sufficient notice" or does not contain enough information to allow a responsive pleading to be framed, the proper motion to be filed is a motion for a more definite statement. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Sisk v. Tex. Parks and Wildlife Dep't*, 644 F.2d 1056, 1059 (5th Cir. 1981). Courts typically grant motions under Rule 12(e) for "shotgun" pleadings, in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

### III. Discussion

**A. Motion to Dismiss**

Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability. *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir. 2005); *Pendleton v. St. Louis Cty.*, 178 F.3d 1007, 1011 (8th Cir. 1999). The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act. *Bennett*, 423 F.3d at 1250. Furthermore, when a plaintiff sues a municipality under § 1983, the plaintiff must show that execution of the municipality's policy or custom caused the alleged injury. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694–95 (1978).

O'Boyle alleges three bases for his retaliation claim: (1) the Town's filing of a RICO suit in response to O'Boyle's multiple lawsuits against the Town pursuant to Florida's Public Records Law, (2) the Town's actions in response to O'Boyle's flying of banners and display of signs with messages criticizing Town officials and other political content, and (3) the passing of the parking ordinance and towing of O'Boyle's truck pursuant to the ordinance. The Court addresses each basis separately.

**1. The Town's RICO Lawsuit Against O'Boyle**

Regarding the Town's RICO lawsuit in response to O'Boyle's multiple lawsuits under Florida's Public Records Law, the Town argues that O'Boyle cannot satisfy the first element of a retaliation claim—constitutionally-protected speech or activity. The Town bases its argument on the premise that O'Boyle's right to public records, which forms the basis of his lawsuits, arises under state law rather than the First Amendment. Assuming without deciding that the Town's premise is

correct, it does not follow that O'Boyle's right to file a lawsuit enforcing a state-law right is not constitutionally protected. The substantive right that forms the basis of O'Boyle's lawsuits against the Town is separate from his right to sue the Town (regardless of the particular underlying grievance). The Town improperly conflates these rights.

Suing a municipality is a form of petitioning the government for a redress of grievances and is thus protected by the First Amendment.[4] *See Tuccio v. Marconi*, 589 F.3d 538, 541 (2d Cir. 2009) ("To be sure, our constitutional doctrine prohibits government officials from punitive retaliation against persons who exercise their First Amendment right to sue the government."); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."); *see also generally Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition."). And the right to petition for a redress of grievances is no less protected by our Constitution when those grievances are based on the government's violation of a state-law right as opposed to a federal right. Accordingly, O'Boyle's filing of lawsuits alleging the Town's violations of Florida law is constitutionally protected and satisfies the first element of O'Boyle's retaliation claim.

The Town argues that the act of filing a lawsuit is not protected by the First Amendment, but the cases the Town cites do not stand for that proposition. Both cases, instead, are limited to the public employee context, in which the Supreme Court has limited speech protections to when the

---

[4] Because the Court holds that the filing of a lawsuit against the government is protected by the First Amendment right to petition the government for a redress of grievances, the Court need not opine on whether suing the government is also protected by other constitutional provisions.

employee speaks as a citizen on a matter of public concern. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). In *Ruotolo v. City of New York*, the court held that a public employee's lawsuit against the city was not constitutionally-protected speech or activity because the lawsuit was not a matter of public concern. 514 F.3d 184, 189 (2d Cir. 2008). Similarly, *Baker v. Mecklenburg County* is cabined to the public-employee context and involved a suit in which the public employee was not "'speaking' as a citizen" and the lawsuit did not involve a matter of public concern. 853 F. Supp. 889, 894–95 (W.D. N.C. 1994). If these cases stood for the proposition that the filing of *any* lawsuit against the government is not constitutionally-protected—as the Town contends—the courts' discussions of whether the employee spoke as a citizen or whether the lawsuit involved a matter of public concern would have been unnecessary. As O'Boyle was not an employee of the Town, the Town's reliance on *Ruotolo* and *Baker* is misplaced. *Cf. Bennett*, 423 F.3d at 1252 ("The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there.").

In what appears to be an attack on the second element of O'Boyle's retaliation claim based on the Town's RICO lawsuit—that the retaliatory conduct adversely affected the protected speech or act—the Town argues that the claim fails because O'Boyle's rights were not actually impeded by the Town's actions, as evidenced by O'Boyle's continued prosecution of lawsuits against the Town. This argument ignores well-settled law on the adverse effect element. The Eleventh Circuit has rejected a subjective test that the plaintiff was "actually chilled" in the exercise of First Amended rights. *Id.* at 1251; *see also id.* at 1252 ("'[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . .' There is no reason to 'reward' government officials for picking on unusually

7

hardy speakers." (alterations in original) (internal citation omitted)). Instead, the adverse effect element of a First Amendment retaliation claim is determined by an objective standard. *Id.* at 1250–51.

Under the objective standard, the adverse effect element is satisfied "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254. "[T]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The Eleventh Circuit has specifically identified the filing of a retaliatory civil suit against the plaintiff as an example of retaliatory conduct that meets this objective standard. *Id.* (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983)). Accordingly, this element is satisfied here.

Finally, the Town argues that O'Boyle's claim fails because he does not allege any municipal custom or policy.[5] The Town is correct that a municipality's liability under § 1983 may not be based on a *respondeat superior* theory of liability and, instead, a municipality is liable under § 1983 only if its official policy or custom caused the alleged injury. *Monell*, 436 U.S. at 690–95; *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). The Court disagrees, however, with the Town's argument that O'Boyle fails to plead municipal liability properly in this case.

One way of establishing municipal liability under § 1983 is showing a constitutional deprivation directed or caused by a person vested with final policymaking authority on behalf of the municipality. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1403 (S.D. Fla. 2014). Where

---

[5] The Town does not challenge the "causal connection" element of O'Boyle's retaliation claim based on the RICO lawsuit. Therefore, the Court does not address this element.

a policymaker is a public body consisting of multiple board members, "a majority of the members of the council constitutes a final policymaker for purposes of creating *Monell* liability." *Id.* (citing *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir.2006); *Matthews v. Columbia Cty.*, 294 F.3d 1294 (11th Cir.2002); *Mason v. Vill. of El Portal*, 240 F.3d 1337, 1339 (11th Cir.2001)). Here, O'Boyle alleges that the Town commission unanimously voted to initiate the RICO lawsuit with the sole purpose of chilling his right to petition in the courts for redress, which is sufficient to satisfy the "official policy" requirement of his claim. (DE 41 ¶¶ 65–66.) Accordingly, the Town's motion to dismiss is denied as to this claim.

### 2. The Town's Actions in Response to O'Boyle's Banners and Signs

In its motion, the Town does not challenge any of the elements of O'Boyle's First Amendment retaliation claim based on its actions in response to O'Boyle's banners and signs. Instead, the Town only argues that O'Boyle's claim is precluded based on a prior case O'Boyle brought against the Town in this District involving similar issues.[6] While the Court may judicially notice its own records, at this stage the record in this case is not sufficiently developed to determine whether claim preclusion applies here and, if so, to what extent.[7] Therefore, the Court denies the Town's motion to dismiss on this basis, but without prejudice to the Town re-raising the issue in a more developed fashion at a later point in these proceedings.

### 3. The Enactment of the Parking Ordinance and Towing of O'Boyle's Truck

O'Boyle concedes that, on its face, the ordinance at issue is "a run-of-the-mill parking

---

[6] The Court does not consider the Town's additional arguments as to this claim because it makes them for the first time in its reply. *See* S.D. Fla. L.R. 7.1(c). Nevertheless, O'Boyle may address the alleged pleading deficiencies raised in the Town's reply when he amends his complaint.

[7] Furthermore, the Town's motion lacks any analysis of the elements of claim preclusion.

ordinance." (DE 62 at 13.) The ordinance does not regulate speech or other expressive activity at all (though it does have an incidental effect on O'Boyle's speech). It does not, on its face, single out any particular person or group. The ordinance merely regulates where people may park their cars, the front or rear of Town Hall. Nevertheless, O'Boyle claims that the enactment of the ordinance violated his First Amendment rights because the motivation for its enactment was to suppress his "truck speech." (DE 62 at 13.)

The scope of the Court's inquiry into the validity of the ordinance is limited by the claim O'Boyle chose to assert. O'Boyle does not assert a claim for a declaratory judgment that the ordinance is unconstitutional. His claim is solely a claim for retaliation. "The core of a First Amendment retaliation claim, its factual heart, is the subjective motivation to retaliate." *Ala. Educ. Ass'n v. Bentley* (*In re Hubbard*), 803 F.3d 1298, 1310 (11th Cir. 2015). Therefore, the Court need not engage in a full-fledged analysis of whether the parking ordinance is constitutional. The issue before the Court is the more limited question of whether the improper subjective motivation (which at this stage the Court accepts as true) for enacting an otherwise neutral ordinance can serve as a basis for finding a First Amendment violation.

The Eleventh Circuit has answered that question in the negative. *See id.* at 1312 ("What we are saying is that, as a matter of law, the First Amendment does not support the kind of claim AEA makes here: a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it."). In *In re Hubbard*, the Alabama Education Association challenged an Alabama statute, previously held otherwise constitutional, on the ground that the statute violated its First Amendment rights "because the subjective motivations of the lawmakers in passing the Act were to retaliate against AEA for its political speech on education policy." *Id.* at 1301. The AEA

issued subpoenas to nonparty lawmakers, who moved to quash the subpoenas based on legislative privilege. *Id.* at 1304. The district court denied the lawmakers' objections. *Id.* The lawmakers then appealed to the Eleventh Circuit, which reversed.

While the issue before the court was the applicability of the legislative privilege, the basis for the court's decision was that the retaliation claim itself was invalid. The AEA argued that the legislative privilege must yield to important federal interests, such as enforcing the First Amendment. *Id.* at 1311–12. The Eleventh Circuit agreed that enforcing the First Amendment is an important federal interest. *Id.* at 1312. The AEA's specific claim did not further an important federal interest, however, because "as a matter of law, the First Amendment does not support the kind of claim AEA makes here: a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Id.*

The Eleventh Circuit relied on *United States v. O'Brien*, 391 U.S. 367 (1968), and Eleventh Circuit precedent applying *O'Brien* to hold "that, when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *In re Hubbard*, 803 F.3d at 1312; *see also O'Brien*, 391 U.S. at 383 ("It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."). The "*O'Brien* rule" applied to the Alabama statute at issue because it did "not, on its face, impinge on any constitutional rights." *In re Hubbard*, 803 F.3d at 1313. Because the basis for the AEA's retaliation claim was the retaliatory motive of lawmakers in passing a statute, *O'Brien* foreclosed the claim. *Id.* As the claim was not a cognizable First Amendment claim, there was no federal interest at stake that justified intruding upon the lawmakers' legislative privileges. *Id.*

The *O'Brien* rule is limited, but this case does not go beyond its limitations. The *In re Hubbard* court suggested that the outcome may have been different had the statute explicitly singled out a specific group. *Id.* at 1313–14 (discussing *Ga. Ass'n of Educators v. Gwinnett Cty. Sch. Dist.*, 856 F.2d 142 (11th Cir. 1988)). The *O'Brien* rule applied because the law was facially constitutional. *Id.* at 1314. The Eleventh Circuit also noted that the *O'Brien* Court itself acknowledged that inquiry into legislative motive is permissible in certain classes of cases outside the free-speech context, and thus limited its holding in *In re Hubbard* to "a free-speech retaliation challenge to an otherwise constitutional statute." *Id.* at 1312 n.14 (citing *O'Brien*, 391 U.S. at 383 n.30).[8] The *O'Brien* rule also seems to be limited to legislative acts, as the Eleventh Circuit *requires* inquiry into the subjective motivations of the members of a political body (such as a town council) when the retaliatory conduct is a course of action that is not "legislation."[9] *See, e.g.*, *Campbell*, 434 F.3d at 1313 (holding that First Amendment retaliation claim based on City Council and Planning Commission's denial of tentative approval for Plaintiffs' proposed building project required

---

[8] Courts and commentators have recognized that the Supreme Court's jurisprudence regarding lawmakers' subjective motivations is somewhat inconsistent and that subjective motivations of lawmakers may indeed be relevant to the constitutionality of a law in various contexts (including certain First Amendment contexts). *See, e.g.*, *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 & nn.6–8 (4th Cir. 1989); *Fraternal Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 554–56 (7th Cir. 1988); *Goldberg v. Whitman*, 743 F. Supp. 943, 949–51 & n.10 (D. Conn. 1990); John Hart Ely, *Legislative and Administrative Motive in Constitutional Law*, 79 Yale L.J. 1205, 1210–12 (1970) ("The Court should stop pretending it does not remember opinions on which the ink is barely dry and try to formulate principles for deciding on what occasions and in what ways the motivation of legislators or other government officials is relevant to constitutional issues."). Nevertheless, it is well-settled that *O'Brien* forecloses free-speech retaliation challenges to facially-neutral laws.

[9] The differential treatment of legislative and non-legislative acts may be justified by the facts that it is easier to identify the retaliatory purpose of a non-legislative act and non-legislative acts are generally more targeted and thus not facially neutral. *Cf. Fraternal Order of Police*, 864 F.2d at 555–56 (discussing distinctions between legislative retaliation and executive retaliation).

"evidence showing that a majority of the members of the final policymaker, the Planning Commission, acted with an unconstitutional motive"). As limited as the *O'Brien* rule may be, it certainly applies to O'Boyle's free-speech retaliation challenge to a facially-neutral, generally-applicable parking ordinance. *See Fraternal Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 554–56 (7th Cir. 1988) (applying *O'Brien* to affirm dismissal of free-speech retaliation claim based on enactment of facially-neutral ordinance). Accordingly, the Court will dismiss this claim with prejudice.

    O'Boyle's retaliation claim based on the towing of his truck pursuant to the parking ordinance similarly fails. The ordinance itself cannot be a basis for O'Boyle's retaliation claim so the ordinance cannot serve as the official policy necessary for municipal liability under § 1983. Therefore, a Town employee towing O'Boyle's truck pursuant to the ordinance, without more, cannot give rise to the Town's liability for First Amendment retaliation. As O'Boyle fails to allege any other predicate official policy or custom, this claim must be dismissed. The Court will, however, dismiss this claim without prejudice and allow O'Boyle to re-plead this claim to the extent he can allege a valid predicate official policy or custom.[10]

---

[10] The Town raises the issue of selective enforcement as a potential claim asserted by O'Boyle, but it appears that O'Boyle did not intend to assert a selective enforcement claim. In his response to the Town's motion to dismiss, O'Boyle does not explicitly make a selective enforcement argument and reaffirms that "the heart of [his] claim still lies in retaliation." (DE 62 at 15.) In any event, the allegations in O'Boyle's complaint fail to state a claim for selective enforcement. Plaintiffs asserting a selective enforcement claim "must show (1) that they were treated differently from other similarly situated individuals, and (2) that Defendant unequally applied a facially neutral ordinance for the purpose of discriminating against Plaintiffs." *Campbell*, 434 F.3d at 1314. The closest O'Boyle comes to alleging a selective enforcement claim is his allegation that "[t]o the best of Plaintiff's knowledge other vehicles necessarily have violated the Town's parking ordinance." (DE 41 ¶ 64.) O'Boyle's allegation that others have violated the ordinance does not provide any information on whether those other violators were treated differently from how O'Boyle was treated.

13

### B. Motion for More Definite Statement

As noted *supra*, the Town's motion also raises arguments more appropriately categorized as arguments in support of a motion for a more definite statement rather than a motion to dismiss. In his complaint, O'Boyle alleges many events that his response to the Town's motion to dismiss confirms are not bases for his retaliation claim against the Town. These extraneous allegations are made in the "general allegations" portion of O'Boyle's complaint (which are incorporated into the portion of the complaint devoted to the retaliation count) as well as in the portion of his complaint limited to his retaliation claim against the Town. For example, in his general allegations O'Boyle refers to letters the mayor of the Town wrote to Town residents. In the portion of his complaint restricted to the retaliation count, O'Boyle refers to a "decorum policy" adopted for town meetings.

As O'Boyle makes clear in his response to the Town's motion to dismiss, the bases for his retaliation claim against the Town are the RICO suit, issues with signs and banners, and the parking ordinance and towing of his truck. The other extraneous allegations therefore appear to only serve to confuse the Town as to which allegations of fact are intended to support the retaliation claim against it. Accordingly, the Court will grant the Town's motion to the extent it is a motion for a more definite statement. In his amended complaint, O'Boyle must separate the allegations solely supporting his claim against the Town from the allegations solely supporting other claims, and he must remove those allegations that are not relevant to any claim.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant, Town of Gulf Stream's, Motion to Dismiss Second Amended Complaint (DE 56) is **GRANTED IN PART**. O'Boyle's retaliation claim is **DISMISSED WITH PREJUDICE** to the extent it is based on the

enactment of the parking ordinance. The retaliation claim is **DISMISSED WITHOUT PREJUDICE** to the extent it is based on the towing of O'Boyle's truck. Furthermore, the motion is **GRANTED** to the extent it is a motion for a more definite statement. O'Boyle shall file an amended complaint within **14 days** of this Order. The amended complaint shall not raise new claims or join new parties; all amendments shall be limited to remedying the errors identified in this order or the Town's motion and reply.[11] The motion is otherwise **DENIED**.

      **DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of May, 2016.

                                                               KENNETH A. MARRA
                                                             United States District Judge

---

[11] Of course, O'Boyle is not prohibited from narrowing his claims. For example, if he determines that his prior lawsuit against the Town does have some preclusive effect, he should narrow his claims accordingly.